OPINION OF THE COURT
David B. Saxe, J.
This is an application by defendant Press Realty Corporation, Inc., also known as Press Realty Company, Inc. (Press), *559 for an order (i) pursuant to RPAPL 1341 (2) for leave to pay into court an amount sufficient to stay all further foreclosure proceedings; or (ii) vacating this court’s November 20, 1987 judgment of foreclosure and sale on the grounds of improper service of process upon Press; or (iii) pursuant to CPLR 317 or 5015 (a) (1) vacating the judgment and setting aside the January 19, 1988 foreclosure sale of the premises on the grounds that Press’ failure to answer was due to "excusable default”.
This action was commenced by plaintiff Citibank, N. A. (Citibank) in February 1987 to foreclose a mortgage on the property located at 765 Second Avenue (the Property) granted by Press to secure a $400,000 loan from Citibank to Anthony Ciccotta (Ciccotta), the principal of Press. On November 20, 1987, this court entered judgment in Citibank’s favor and directed a public auction of the Property. On January 19, 1988, after publication of notice of the sale, a public auction of the Property was held at which the Property was struck down to intervening plaintiff Nir as the successful bidder.
On February 4, 1988 — over two weeks after the foreclosure sale and the successful bid and execution of the terms of sale by Mr. Nir, Press obtained an order to show cause and temporary restraining order staying delivery of the deed to the Property by the Referee and seeking a vacatur of the judgment.
In support of its application for the requested relief, Press asserts that pursuant to RPAPL 1341 (2) it has the statutory right to pay all interest and principal due into court — and thereby effect a "redemption” of the Property from the foreclosure — at any time prior to tender of a deed to Mr. Nir by the Referee. Press also claims that it was never' properly served with the summons and complaint through the Secretary of State; and that even if properly served, Press’ default in answering and appearing was excusable and should therefore be vacated and the foreclosure sale rescinded.
Press Realty’s only argument worthy of some extensive discussion is that RPAPL 1341 (2) provides this court with the authority to stay the delivery of a deed by the Referee to the successful purchaser of the Property (Nir) at the foreclosure sale.
As noted previously, pursuant to article 13 of the RPAPL and this court’s November 20, 1987 judgment, a public auction of the Property was held on January 19, 1988. At the auction, *560 the premises were struck down to Mr. Nir, who promptly executed the terms of sale and tendered the required down payment of 10% of the purchase price to the Referee. The foreclosure sale extinguished, as a matter of law, any right of Press to "redeem” the Property through a tender into court of the principal and interest due to Citibank pursuant to RPAPL 1341 (2). This principle — that a mortgagor’s interest in and right to redeem a mortgaged property is terminated by a valid foreclosure sale — whether or not a deed has been delivered to the purchaser — has been part of New York law for over a century. Thus, as early as 1865 the Court of Appeals declared that "the foreclosure, and a sale by the master, barred the mortgagor’s equity of redemption * * * A deed was not necessary to accomplish that result.” (Tuthill v Tracy, 31 NY 157, 162; accord, Barnard v Jersey, 39 Misc 212 [Sup Ct 1902] [right to redeem is terminated by the foreclosure sale and not by the Referee’s deed to the purchaser].)
This principle has been recently reaffirmed in a series of bankruptcy cases. In In re Butchman (4 Bankr 379 [SD NY 1980]), the mortgagor filed a bankruptcy petition after a foreclosure sale but before the deed was delivered to the purchaser. The court held that the petition was ineffective to stay the sale because: "It is settled law in New York that a valid judgment and sale in a mortgage foreclosure action entitle the purchaser at the sale to receive a deed to the premises upon compliance with the terms of the sale and that the mortgagor has no right to redeem the premises after the sale but before the purchaser has received a deed * * * Thus, the foreclosure sale effectively cut off the debtors’ legal title or equity of redemption in the mortgaged premises.” (Supra, at 380.)
In In re Smith (7 Bankr 106 [WD NY 1980]) the court reached an identical result, and summarized the applicable law as follows: "Specifically, the mortgagor’s right of redemption, which can still be exercised after the Judgment of Sale, no longer exists after the sale itself; the sale cuts off any such right * * * Additionally, once a valid judgment is obtained and a sale takes place, the purchaser is entitled to a referee’s deed.” (Supra, at 108.)
Press’ claim that it may "redeem” the Property from the mortgage after the foreclosure sale was also rejected in In re Ghosh (38 Bankr 600 [ED NY 1980]), where the court held that "under New York law a debtor loses all equitable and legal interest in real property validly sold at foreclosure *561 whether or not the deed to that property has been delivered to the purchaser.” (Supra, at 602; accord, In re Ellis, 40 Bankr 760, 763 [ED NY 1984] ["(I)t has always been the law in New York that the mortgagor’s equity of redemption is barred by the foreclosure and sale and that a deed is not necessary to accomplish that result * * * (therefore, the mortgagor’s right to cure the mortgage arrears was cut off * * * by the foreclosure sale”].)
Press, ignoring these authorities, relies entirely upon Long Is. Sav. Bank v Schoon (103 Misc 2d 600 [Sup Ct, Suffolk County 1980]). While the Schoon court interpreted RPAPL 1341 (2) to permit "redemption” of the mortgage at any time prior to the conveyance of a deed by the Referee, Press’ reliance on Schoon to permit redemption of the Citibank mortgage is mistaken.
The basis of Schoon (supra) is the assertion that "anything short of passing of title by delivery of the deed [by the Referee] does not constitute a sale, but merely an agreement to sell”. (Supra, at 602.) But as the courts in In re Ellis (supra) and In re Ghosh (supra) expressly recognized, Schoon confuses "the usual buyer/seller relationship [where] * * * [t]he seller has the option to rescind because * * * he continues to hold legal title until the deed is delivered” with a forced foreclosure sale where the "mortgagor * * * has no legal or equitable interest in real property after a foreclosure sale, even if the formal transfer of the title has not taken place”. (In re Ghosh, 38 Bankr, supra, at 602-603; see also, In re Ellis, supra, at 763, n 3.) As a result, Schoon’s recognition of a mortgagor’s right to redeem after a foreclosure sale has not been followed by other courts.
Accordingly, I hold that Press’ statutory right to "redeem” the Property was extinguished by the January 19, 1988 foreclosure sale.
Press’ argument that it was not properly served with process is without merit. I hold that service of the summons and complaint was made through the Secretary of State pursuant to Business Corporation Law § 306; that any slight discrepancy in the corporate name was caused by Mr. Ciccotta’s execution of the mortgage on behalf of "Press Realty Company, Inc.” Additionally, Press apparently failed to keep the Secretary of State apprised of the removal of its office from one location to another. Therefore, it is the architect of its own troubles and cannot attack the service made on the *562 Secretary of State even though it did not receive actual notice. (Colonial Sand & Stone Co. v Enrico & Sons Contrs., 66 AD2d 705 [1st Dept 1978].)
Finally, with respect to the assertion of Press that its default should be excused, it is clear that Press had actual knowledge that Citibank had commenced foreclosure proceedings since August 1987. Accordingly, since CPLR 317 expressly requires "a finding of the court that [the defendant] did not personally receive notice of the summons in time to defend and has a meritorious defense”, Press is not entitled to relief under CPLR 317.
As to merit, Press has defaulted in paying almost $200,000 in taxes and other charges to the City of New York. Press Realty’s argument in this regard is that courts are reluctant to grant foreclosure based solely upon tax defaults. In this case, unlike one cited by Press (Central Natl. Bank v Paton, 109 Misc 2d 42), Press, not Citibank, was obligated to make all real estate tax payments. Had Citibank not filed answers in the two in rem tax foreclosure proceedings, Press Realty would have lost title to the premises.
Finally, Press Realty’s assertions of waiver, estoppel and Citibank’s bad-faith actions are without merit.
What is clear is that Press has ignored the foreclosure process until the rights of a good-faith purchaser have intervened. Press comes to this court too late. Press’ motion is denied. The temporary restraints previously issued are discharged.